**Anthony WATSON, Plaintiff,**

v.

**Supt. John McGINNIS of Downstate Correctional Facility, Captain William Many, Correction Officer R. Decker and Correction Officer R. Ruiz, Defendants.**

**No. 96 Civ. 7212(LAK)(AJP).**

United States District Court,
S.D. New York.

Oct. 15, 1997.

Anthony Watson, Sonyea, NY, pro se.

Annemarie Prudenti, Asst. Atty. General, New York City, for Defendant.

**ORDER**

KAPLAN, District Judge.

By order dated May 1, 1997, this Court (1) denied the motion to dismiss of defendant Ruiz, (2) granted the motions to dismiss as to defendants McGinnis and Many, (3) granted plaintiff leave to serve, within 21 days, an amended complaint in an effort to state a legally sufficient claim against defendants McGinnis and Many, and (4) extended plaintiff's time to serve defendant Decker until June 15, 1997. No amended complaint has been filed. No proof of service on Decker has been filed.

On September 25, 1997, Magistrate Judge Peck recommended that defendant Ruiz's motion for summary judgment dismissing the complaint as to him be granted and that the action be dismissed without prejudice as to defendant Decker pursuant to Rule 4(m). No objections have been filed. Having reviewed Magistrate Judge Peck's report and recommendation and having found it to be correct in all respects, defendant Ruiz's motion is granted. Further, the action is dismissed as against defendant Decker without prejudice pursuant to Rule 4(m).

As this ruling disposes of all remaining claims against all remaining parties, the Clerk is directed to enter final judgment and close the case.

SO ORDERED.

*REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge:

To the Honorable Lewis A. Kaplan,
United States District Judge:

This Court previously denied defendant Corrections Officer Ruiz's motion to dismiss holding that a prison "guard's intentionally calling a prisoner a snitch in order to cause him harm by other inmates states an Eighth Amendment excessive force claim." *Watson v. McGinnis,* 964 F.Supp. 127, 131 (S.D.N.Y. 1997). The parties having completed discovery, Officer Ruiz now moves for summary judgment. For the reasons discussed below, the Court recommends that Officer Ruiz's

summary judgment motion be granted because Watson has failed to submit any admissible evidence that Officer Ruiz called Watson a snitch.[1]

### FACTS

As a preliminary matter, the Court notes that plaintiff Watson has not filed any papers in opposition to defendant's summary judgment motion, despite being warned of the consequences. (*See* 8/22/97 Order.) Accordingly, pursuant to S.D.N.Y. Local Civil Rule 56.1(c), "all material facts set forth in the [Rule 56.1] statement required to be served by the moving party will be deemed to be admitted...." Nevertheless, defendant's moving papers include Watson's entire deposition transcript and his testimony at two prison disciplinary hearings, and the Court has considered this evidence on Watson's behalf.

#### Watson's Allegations Against Corrections Officer Ruiz

In March 1996, plaintiff Anthony Watson was incarcerated at the Downstate Correctional Facility, and Corrections Officer Ruiz was a guard there. (Ruiz Rule 56. 1. Stmt. ¶¶ 1–2; Watson Dep. at 5, 7–8, 10.)

According to Watson's deposition testimony, on Saturday March 23, 1996, Watson was approached by Officer Ruiz and asked if he knew anything about an inmate smoking marijuana. (Watson Dep. at 12–13.) When Watson said he did not know, Officer Ruiz placed him in keeplock. (Watson Dep. at 13–14.) Officer Ruiz told Watson that the keeplock was for a disturbance in the television area resulting in a damaged television. (Watson Dep. at 14–16.) Watson told Officer

Ruiz that he did not break the television and was not even near the television set. (Watson Dep. at 17, 22.)[2] Watson received a misbehavior report for damaging the television and for creating a disturbance. (Watson Dep. at 16; Ruiz Rule 56.1 Stmt. ¶ 9; Prudenti Aff. Ex. A: Misbehavior Report.)

Watson testified at his deposition that while Officer Ruiz did not say it directly to Watson, Officer Ruiz told other inmates that Watson was a "snitch." (Watson Dep. at 27–28.) Watson testified that four fellow inmates—Kermit Williams, Samuel Cortez, Eugene Jackson and Angel Rosado—"heard Officer Ruiz call me a snitch in the TV area at about 11:15" on March 23. (Watson Dep. at 27–30; *see also* Prudenti Aff. Ex. D: Ruiz 3/23/96 Letter to Supt. McGinnis at 2–3.)

#### Watson's Complaint to Superintendent McGinnis

Fearing reprisals for being labeled a snitch, Watson wrote Superintendent McGinnis a letter on March 23, 1996. (Watson Dep. at 31; Prudenti Aff. Ex. D: Watson Letter to McGinnis; Ruiz Rule 56.1 Stmt. ¶ 18.) Watson wrote in the letter that Officer Ruiz "approached T.V. area of [cell] block, turned down the T.V. and told inmates in [the] area: 'Watson told me that you guys had something to do with this [breaking a wire junction box near the T.V.], so I locked him up so than you don't hurt him for being a snitch.'" (Prudenti Aff. Ex. D at 2; *see also* Ruiz Rule 56.1 Stmt. ¶ 19.) Watson complained that calling an inmate a snitch "is a horrible thing to do to an [inmate].... I could very well be scarred for life, or even killed." (Prudenti Aff. Ex. D at 3.) Watson requested that Superintendent McGinnis re-

**1.** The Court's prior opinion dismissed the action as to defendants McGinnis and Many, subject to the filing of an amended complaint. Defendant Watson did not serve or file an amended complaint. Plaintiff Watson also was given until June 15, 1997 to serve the complaint on defendant Corrections Officer Decker. He did not do so and the Court recommends dismissal of the action as to Decker without prejudice pursuant to Fed.R.Civ.P. 4(m) *See Watson v. McGinnis,* 964 F.Supp. at 128, 132.

**2.** Watson's deposition testimony denying involvement with the television incident is inconsistent with the statements he made at his prison disciplinary hearing of March 27, 1996. (Prudenti

Aff. Ex. B: Tier II Disciplinary Hearing Transcript, 3/27/96; *see generally,* Ruiz Rule 56.1 Stmt. ¶¶ 3–9.) Watson there testified that he awoke at 11 A.M. on Saturday, March 23, 1996 due to a loud volume of the television. (Prudenti Aff. Ex. B at 3.) He approached the viewing area and requested that the volume be lowered. When the inmates ignored his request, Watson turned off the television. (*Id.* at 3–4.) When inmate McGraw turned the television back on loudly, Watson turned off the set a second time. (*Id.* at 5.) Inmate Samuel Cortez, Watson's witness at the prison hearing, corroborated Watson's testimony. (*Id.* at 7–8.)

lease him from keeplock to general population status so he could dispel the rumor that he was a snitch. (*Id.; see also* Ruiz Rule 56.1 Stmt. ¶ 20; Watson Dep. at 85.)

**Watson's Altercation with McGraw**

Watson testified that he was temporarily released from his cell by Officer Decker during the evening on March 26, 1996. (Ruiz Rule 56.1 Stmt. ¶ 23; Watson Dep. at 62–63; Prudenti Aff. Ex. E: Disciplinary Hearing Tr. at 4.) Watson was approached by inmate McGraw,[3] who was brandishing a makeshift knife and mumbling about how Watson was a snitch. (Watson Dep. at 64–66; Ruiz Rule 56. Stmt. ¶ 24; Prudenti Aff. Ex. E at 5.) After exclaiming "snitches get stitches," McGraw attacked Watson. (Watson Dep. at 67; *see also, id.* at 54–55; Prudenti Aff. Ex. E at 6.) The altercation ended when Watson pushed McGraw off the tier, a drop of around twelve feet. (Watson Dep. at 70; Prudenti Aff. Ex. E at 6.) Watson sustained cuts and scratches on his neck. (Ruiz Rule 56.1 Stmt. ¶ 26; Watson Dep. at 74–75.) Officer Decker and twenty other inmates watched the altercation, but did not intercede. (Watson Dep. at 66, 68.)

The next day, March 27, 1996, Officer Ruiz asked Watson whether he was involved in an altercation the previous night. (Ruiz Rule 56.1 Stmt. ¶ 27; Watson Dep. at 34–35.) Watson initially denied it, but when further questioning showed that Ruiz already knew about the incident, Watson admitted it. (Watson Dep. at 35–38; Ruiz Rule 56.1 Stmt. ¶¶ 28–29.) When asked at his deposition why he lied to Officer Ruiz about the altercation, Watson responded that since he was already "noted for being a snitch," he did not want to exacerbate this rumor by providing an officer information about another inmate. (Watson Dep. at 38.)

Officer Ruiz arranged for Watson to receive medical treatment for his superficial cuts. (Ruiz Rule 56.1 Stmt. ¶¶ 30–31; Watson Dep. at 73–75.) Officer Ruiz charged Watson in a misbehavior report with fighting, unreported injury and assault. (Ruiz Rule 56.1 Stmt. ¶ 32; Prudenti Aff. Ex. E: Disci-

plinary Hearing Tr. at 3.) At the conclusion of his Tier III Disciplinary Hearing, Watson was found guilty of fighting and unreported injury, but not guilty of assault. (Ruiz Rule 56.1 Stmt. ¶ 41; Prudenti Aff. Ex. E at 24.)

**Watson's Present Lawsuit**

In the only portion of his pro se complaint still surviving (*see* footnote 1, above), Watson alleges a 42 U.S.C. § 1983 claim of excessive force against Officer Ruiz for calling him a snitch, which, according to Watson, led to McGraw's attack.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991); *Hernandez v. New York City Law Dept. Corp. Counsel,* 1997 WL 27047 at *6 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.); *Burger v. Litton Industries, Inc.,* 1996 WL 421449 at *7 (S.D.N.Y. April 25, 1996) (Peck, M.J.), *report & rec. adopted by* 1996 WL 609421 (S.D.N.Y. Oct.22, 1996).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, here, defendant Ruiz. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994); *Hernandez v. New York City Law Dept.,* 1997 WL 27047 at *6; *Burger v. Lit-*

---

**3.** McGraw was the inmate who, according to Watson's testimony at his disciplinary hearing, turned the television back on after McGraw had turned it off. (*See* footnote 2, above; *see also* Prudenti Aff. Ex. E at 7, 20.)

*ton*, 1996 WL 421449 at *7 The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *E.g., Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct at 2552–53; *Ruiz v. Selsky*, 1997 WL 137448 at *3 (S.D.N.Y. March 24, 1997) (Peck, M.J.).

To defeat a motion for summary judgment, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the non–moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, e.g., Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *see also Chambers v. TRM*, 43 F.3d at 36; *Gallo v. Prudential*, 22 F.3d at 1223; *Hernandez v. New York City Law Dep't*, 1997 WL 27047 at *6. The Court draws all inferences in favor of the nonmoving party—here, Watson—only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Hernandez v. New York City Law Dep't*, 1997 WL 27047 at *6; *Burger v. Litton*, 1996 WL 421449 at *7. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM*, 43 F.3d at 37; *see also, e.g., Hernandez v. New York City Law Dep't*, 1997 WL 27047 at *6.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine the existence of any disputed issues of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Ruiz v. Selsky*, 1997 WL 137448 at *3. To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted) *see also, e.g., Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11–12; *Shaw v. City of New York*, 1997 WL 187352 at *2 (S.D.N.Y. April 15, 1997) (Peck, M.J.); *Ruiz v. Selsky*, 1997 WL 137448 at *3.

The Court recognizes that it must "extend extra consideration" to pro se plaintiffs such as Watson; pro se parties are "to be given 'special latitude on summary judgment motions.'" *Reyes v. Koehler*, 815 F.Supp. 109, 112 (S.D.N.Y.1993) (quoting *McDonald v. Doe*, 650 F.Supp. 858, 861 (S.D.N.Y.1986)); *see also, e.g., Valentine v. Honsinger*, 894 F.Supp. 154, 156 (S.D.N.Y.1995); *Gabai v. Jacoby*, 800 F.Supp. 1149, 1153 (S.D.N.Y. 1992).

## II. WATSON HAS FAILED TO SUBMIT ADMISSIBLE EVIDENCE TO ESTABLISH AN ESSENTIAL ELEMENT OF HIS CLAIM

In denying Officer Ruiz's motion to dismiss, this Court held that a prison "guard's intentionally calling a prisoner a snitch in order to cause him harm by other inmates states an Eighth Amendment excessive force claim." *Watson v. McGinnis*, 964 F.Supp. at 132.[4] After completion of discovery, Ruiz's summary judgment motion should be granted, however, because Watson has not presented any admissible evidence that Officer

---

4. For a general discussion of the law regarding Eighth Amendment excessive force claims pursuant to § 1983, *see, e.g., Malloy v. Correctional*

*Officer DeFrank*, 1996 WL 631725 (S.D.N.Y. Oct.31, 1996) (Peck, M.J.).

Ruiz called him a snitch. As the Supreme Court stated in *Celotex:*

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no, genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

An essential element of Watson's case is that Officer Ruiz called Watson a snitch. Watson admitted at his deposition that he never heard Officer Ruiz call him a snitch. (Watson Dep. at 27–28.) Watson merely testified that other inmates said that Officer Ruiz had called him a snitch. (Watson Dep. at 27–30.) What other inmates (allegedly) told Watson, however, constitutes hearsay and is therefore inadmissible. *See, e.g., Reyes v. Koehler,* 815 F.Supp. 109, 113 (S.D.N.Y.1993); *see also, e.g., Gostanian v. Bendel,* 1997 WL 214966 at *9 (S.D.N.Y. April 25, 1997); *Mueller v. County of Westchester,* 943 F.Supp. 357, 359 (S.D.N.Y.1996), *aff'd,* 122 F.3d 1056 (2d Cir. 1997).

Watson cannot complain that he was not aware that he needed to oppose Ruiz's summary judgment motion with admissible evidence that Ruiz called him a snitch. When a month passed without Watson responding to defendant Ruiz's motion, the Court ordered Watson to do so and directed Watson's attention to paragraphs H and I of the "Rules of Procedure Before Magistrate Judge Andrew J. Peck," a copy of which was provided to Watson. (Order dated 8/22/97.) My Rules paragraph H provides:

### H. *Summary Judgment Motions (Pro Se Cases)*

Plaintiff pro se is advised to carefully read Rule 56 of the Federal Rules of Civil Procedure. Plaintiff is further advised that, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, plaintiff may not simply rely upon the complaint, but plaintiff must respond by affidavits or as otherwise provided in that rule, setting forth specific facts showing that there is a genuine issue of material fact for trial. Any factual assertions in defendants' affidavits will be accepted by the Court as being true unless plaintiff submits affidavits or other documentary evidence contradicting defendants' assertions. If plaintiff does not so respond, summary judgment, if appropriate, may be entered against plaintiff. If summary judgment is granted against plaintiff, the case will be dismissed and there will be no trial.

Note also that S.D.N.Y. Local Civil Rule 56.1 requires plaintiff to include a separate short and concise statement of any material facts as to which plaintiff contends there exists a genuine issue. In the absence of such a statement, all material facts set forth in defendants' Local Civil Rule 56.1 statement will be deemed admitted.

Failure to respond to defendants' summary judgment motion may result in the grant of summary judgment for defendant, ending plaintiff's case.

*See, e.g., Champion v. Artuz,* 76 F.3d 483, 485–86 (2d Cir.1996).

Moreover, my August 22, 1997 Order specifically warned Watson that he needed admissible evidence that Ruiz called him a snitch:

> In particular, Watson must provide evidence, in admissible form, that Officer Ruiz called him a snitch (for example, the *affidavit of an inmate who heard Ruiz call Watson a snitch*).

(Order dated 8/22/97, emphasis added.)

Watson has not presented any such evidence. Indeed, although two months have passed since Ruiz's motion and one month has passed since my Order, Watson has not responded at all to defendants' summary judgment motion.[5] Since Watson was

---

**5.** Plaintiff Watson's failure to obey the Court's   order to respond to the motion is an independent

warned of the consequences of his failure to submit admissible evidence, and since Watson has presented no admissible evidence that Officer Ruiz called him a snitch, Watson has not established an essential element of his case and thus Officer Ruiz's summary judgment motion should be granted.

### CONCLUSION

For the reasons set forth above, I recommend that defendant Ruiz's summary judgment motion be granted.

### FILING OF OBJECTIONS TO THIS RE-PORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

ground for granting the motion, as a sanction for failure to obey court orders. *See, e.g., Lediju v. New York City Dep't of Sanitation,* 173 F.R.D. 105, 112–13 (S.D.N.Y.1997) (Leisure, D.J. & Peck, M.J.).